CAYTON ERHARD ET AL. *v.* ASSELINE HEARNE ET AL.

LIMITATION OF THREE YEARS.—The exemption from suit, given by the three years' statute of limitations, is not lost by a temporary break in the possession subsequent to the completed term of adverse possession; and, without determining whether the elder title is ex-

tinguished, or that the matured junior title may or may not be abandoned, so that the holder of the elder title, on regaining his possession, or in a contest with one not in privity with the junior title, would have his rights unaffected, it is decided that the exemption from suit given by the fifteenth section of the statute of limitations can be pleaded as a defense by one in possession in privity of estate, though with disconnected possession with one who had such three years' possession under the statute.

Justices MOORE and GOULD, having been of counsel, were disqualified. This was certified to the Governor, who appointed Charles S. West and Alexander S. Walker special justices for the trial and determination of this cause.

Special court. ROBERTS, Chief Justice; WEST and WALKER, Associate Justices.

ERROR from Robertson. Tried below before the Hon. John B. Rector.
The facts are given in the opinion.

*William H. Hamman*, for plaintiffs in error, cited and discussed 10 Barr, 385, and cases cited; Huntington v. Brinckerhoff, 10 Wend., 278; Baker's Adm'r v. Baker's Adm'r, 13 B. Monr, 409; Montgomery v. Caldwell, 4 Bibb, 306; The State v. Hankins, 6 Ired., (N. C.,) 428; Spear v. Newell, 13 Vt., 294; Phelps v. Wood, 9 Vt., 399; King *et al. v.* The State Bank, 13 Ark., 269; Wilson v. Marshall, 10 La. Ann., 331; Norwood v. Devall, 7 La. Ann., 523; Prall v. Peet, 3 La., 274; Gaines v. Hennen, 24 How., 568; 3 Caine, 206; 2 Salkeld, 424; Cook *et al. v.* Wood, 1 McCord, 139; Shields v. Boone, 22 Tex., 197; Chambers v. Shaw, 23 Tex., 168; Bissell v. Lavaca, 6 Tex., 55; Armstrong v. Nixon, 16 Tex., 614; Martel v. Hernsheim, 9 Tex., 294; Tyler on Ad. Poss. and Eject., 808; Henderson v. Kenner, 1 Rich., (S. C.,) 474; Cunningham v. Frandtzen, 26 Tex., 39; Mason v. McLaughlin, 16 Tex., 24; Whitehead v. Foley, 28 Tex., 288; Republic v. Skidmore, 2 Tex., 266; Thompson v. Buckley, 1 Tex., 35; Engel-

king v. Von Wamel, 26 Tex., 469; 1 Kent, 462; 9 Bacon's
Ab., 240; 2 Cranch, 386, 399; Sydnor v. Palmer, 29 Wis.,
253; Stokes v. Berry, 1 Salkeld, 421; Atkins v. Horde, 1
Burrow, 119; Davenport v. Tyrrell, 1 W. Black., 675; 2
Greenl. Ev., 230; Beckford v. Wade, 17 Ves. Jr., 87; Thomp-
son v. Thompson, 33 E. C. L., (6 Ad. & E., 726;) 2 Smith's
Leading Cases, 561; Winburn v. Cochran, 9 Tex., 125; 13
Mich., 342; Baker v. Kelley, 11 Minn., 496; Taylor v. Miles,
5 Kan., 515; Swickard v. Bailey, 3 Kan., 512; 5 Nev., 211;
Perry v. Lewis, 6 Fla., 560; Townsend v. Jemison, 9 How.,
413; Scott v. Rhea, 5 Tex., 260; Newby v. Blakely, 3 H. &
M., 57; Brent v. Chapman, 5 Cr., 361; Clark v. Hardeman,
2 Leigh, 357; Shelby v. Guy, 11 Wheat., 371; Bird v. Lisbros,
9 Cal., 5; Mattell v. Uncle Sam G. & S. M. Co., 1 Nev., 200;
Stanley v. Earl, 5 Litt., 283; Ogden v. Saunders, 12 Wheat.,
348; Smoot v. Wathen, 8 Mo., 524; 13 Mo., 341; 16 Mo., 280;
McElmoyle v. Cohen, 13 Pet., 327; Kelly v. Jackson, 6 Pet.,
631; Greenleaf v. Birth, 6 Pet., 311; Den v. Sinnickson, 4
Hals., 152; Foust v. Ross, 1 Watts & Serg., 506; Hunter v.
Cochran, 3 Barr, (Penn.,) 108; Thomas v. Wright, 9 Serg.
& Rawle, 92; Foster v. Joyce, 3 Wash. C. C., 498; Jackson
v. Schauber, 7 Cowen, 201; Jackson v. Todd, 6 John., 257,
266; Jackson v. McCall, 10 John., 380, 381; Jackson v.
Harder, 4 John., 201; Jackson v. Hudson, 3 John., 386; Voor-
hies v. Graham, 1 A. K. Marshall, (Ky.,) 233; Chiles v. Jones, 7
Dana, 540; Perryman's Lessee v. Callison, 1 Tenn., 509, 515;
Peck v. Carmichael, 9 Yerger, 325; Macklot v. Dubreuil, 9
Mo., 487; Griffith v. Dicken, 4 Dana, 562; Kessler v. M'Cona-
chy, 1 Rawle, 447; Thompson v. Cragg, 24 Tex., 597; League
v. Atchison, 6 Wall., 112; Osterman v. Baldwin, Id., 123;
Williamson v. Simpson, 16 Tex., 444; Castro v. Wurzbach, 13
Tex., 131; Marsh v. Wier, 21 Tex., 109; Smith v. Power, 23
Tex., 33; Winters v. Laird, 27 Tex., 616; Cox v. Bray, 28
Tex., 262; Hopkins v. Calloway, 7 Cold., 37; Whiteside v.
Singleton, Meigs, 224; Ellis v. Murray, 28 Miss., 143; Ford
v. Wilson, 35 Miss., 491; Doctor and Student, 27; Finch, 132;

Noy's Maxims, 116, 119; 2 Arch. Nisi Prius, 318; Chol-mondely *v.* Clinton, 2 Jac. & W., 139; Incorporated Society *v.* Richards, 1 Drury & Warren, 289; 3 Blackst. Comm., 193.

*H. D. Prendergast* and *Davis & Beall,* for defendants in error, cited Angell on Lim., 206, 327, 346, 484; White *v.* Latimer, 12 Tex., 62; Sawyer *v.* Boyle, 21 Tex., 39; Becton *v.* Alexander, 27 Tex., 669; McDonald *v.* McGuire, 8 Tex., 365; Shields *v.* Boone, 22 Tex., 193; Richards *v.* Md. Ins. Co., 8 Cr., 84; Cunningham *v.* Frandtzen, 26 Tex., 37; Pearson *v.* Burditt, 26 Tex., 173; Porter's Lessee *v.* Cocke, Peck, 30; Hembert *v.* Trinity Church, 24 Wend., 586; Whitehead *v.* Foley, 28 Tex., 11; Smith *v.* Montes, 11 Tex., 26; Winburn *v.* Cochran, 9 Tex., 125; Stokes *v.* Berry, 1 Salkeld, 421; 1 Bur., 119; Christy *v.* Alford, 17 How., 601; 1 Greenl. Ev., 22, 24, 204, 211; Hearne *v.* Erhard, 33 Tex., 60; Lee *v.* Salinas, 15 Tex., 497; Simpson *v.* McLemore, 8 Tex., 448; Bradford *v.* Hamilton, 7 Tex., 57; Martin *v.* Parker, 26 Tex., 261; Paschal's Dig., 5303; Neill *v.* Keese, 5 Tex., 23; Miller *v.* Alexander, 8 Tex., 36; Hunt *v.* Turner, 9 Tex., 385; Herrington *v.* Williams, 31 Tex., 450.

WALKER, SPECIAL JUSTICE.—The plaintiffs, who are appellants, claim under a concession for eleven leagues, part of which was granted in 1830 to Antonio Manchaca, by title held sufficient to convey the same to his assignee, Allen Reynolds.

The plaintiffs are the heirs of Allen Reynolds, and so describe themselves in the proceedings, claiming his estate in the Manchaca grant.

The defendants claim part of the same land, under a location and survey of the Dred Dawson headright league and labor certificate surveyed in 1839, and the field-notes with the certificate returned to the Land Office.

March 6, 1840, all the heirs of Allen Reynolds, except

Eliza C. Reynolds, then a minor, (afterwards Mrs. Willett,) conveyed their interest in this Manchaca grant to Levi Jones.

Dred Dawson seems to have resided on the land from 1834, and certainly from 1839 until his death, holding adverse possession of the land covered by his survey from the location of his headright, his heirs continuing the possession; but on March 25, 1845, a partition of the land among his heirs was confirmed, in which partition the land in controversy—a tract of nine hundred and three acres—was set apart to Britton Dawson, one of the heirs of the deceased, Dred Dawson.

November 20, 1851, Britton Dawson sold his interest so allotted to him to S. R. Hearne, by written contract and a bond for title.

Hearne entered upon the land in the latter part of 1852 or 1853, and held adverse possession until his death; and the possession was continued by his legal representatives to the time of trial.

Between the time of the partition of Dred Dawson's estate, 25th March, 1845, and the entry of Hearne in 1852 or 1853, there was no actual possession of the nine hundred and three acres in controversy, by Britton Dawson or by any one holding under him.

July 12, 1849, Levi Jones, by his deed of that date, surrendered his interest, reciting that he had done so in 1840.

November 4, 1852, Mrs. E. C. Willett and her husband conveyed her interest in the Manchaca grant to George Resley.

September 20, 1858, plaintiffs brought trespass to try title against S. R. Hearne and others. The suit in some way was settled as to all of the defendants but Hearne. Pending the suit, several of the plaintiffs died, and their representatives continued the prosecution of the suit. Hearne also died, and his estate is represented by his widow, Mrs. Aneline Hearne, and his administrator, H. D. Prendergast.

The defendants pleaded not guilty, and limitation of three years.

On the trial, the court instructed the jury " that the deed from Harriet Reynolds and others to Levi Jones, bearing date 6th March, 1840, vested in Levi Jones a good title to all the land in controversy, * * * except the interest of E. C. Reynolds, afterwards Mrs. Willett, which was not affected by the deed. The title conveyed by the deed of the 6th March, 1840, was outstanding in Levi Jones on the 17th of March, 1841; and if Dred Dawson had had his headright league and labor certificate located and surveyed, * * * and he and his heirs successively held actual, adverse, continued, and exclusive possession of said league and labor of land, including the land in controversy, for three years next after the 17th day of March, 1841, under such title, then you will find for the defendants." * * *

" You are further instructed, that the deed from E. C. Willett and husband to George Resley, dated November 4, 1852, passed and vested her title to the land in controversy * * in said Resley; and as said title was outstanding in said Resley at the commencement of this suit, she had nothing to sue for at that date, and you will find for defendants as to the interest in the land in controversy claimed through her."

To avoid the effect of the statute of limitations, plaintiffs set up minority and coverture, and pleaded and offered in evidence the record of two suits brought by those whose estate they claimed, the first against said Dred Dawson, December 14, 1841, which abated by his death in 1843, and the other brought in less than twelve months, September 9, 1844, against Britton Dawson, which, after the death of several of the plaintiffs had been suggested of record, was dismissed at the instance of Britton Dawson, April 24, 1854.

The replication setting up these judgments was adjudged insufficient, and the testimony, when offered, excluded as irrelevant.

The verdict of the jury was for the defendant. An exam-

ination of the record shows that it was sustained by the testimony upon the issues submitted by the court.

Many errors are assigned by the appellants, but those relied on may be grouped under the following heads: 1, the action of the court upon the matters pleaded in replication to the statute of limitations by the plaintiffs; 2, the charge of the court upon the statute of limitations; 3, the charge as to the effect of the sale, by Mrs. Willett, of her interest to Resley; and, 4, as to the admission of the evidence of the title bond and contract by Britton Dawson to S. R. Hearne, as a basis for the adverse possession as a defense under the three years' statute of limitations.

On the trial, plaintiffs exhibited their title to Allen Reynolds, and proved heirship, and that defendants were on the the land claimed; also minority and coverture of parties, so that, with the effect sought to be given to the two suits pleaded as saving the rights of plaintiffs, limitation of three years would not run.

The defendants, after proving their title and possession, read in evidence the said deed from Mrs. Harriet Reynolds and others to Levi Jones, and the deed from Mrs. Willet and husband to George Resley, as described above.

It was seriously objected to these deeds, by plaintiffs, that inasmuch as the titles, both that in Jones and that in Resley, were barred by adverse possession—that of Jones by possession of Dred Dawson from 1839, continued by his heirs to March 25, 1845; that of Resley by the possession of Hearne from 1852 or 1853 to the institution of suit in 1858—they could not be used as outstanding titles, so as to present a bar in favor of defendants.

The reply to this, urged by the defendants, seems conclusive—that the estate in Jones from 1840 to 1849, whatever it was, should have been protected by himself. While his, the plaintiffs could not protect it by their suits, or destroy it by any acts they have alleged or offered to prove. After Jones released to plaintiffs, they could wield his title with no

greater force, by reason of their minority or coverture during his administration of the title while it was his. As to their rights, they took as assignees of Jones, with nothing but what he could convey. Having suffered adverse possession of the land by Dawson and the Dawson heirs, from his purchase in 1840 until March 25, 1845, under the Dawson headright and survey, his right to sue was gone, and he could not, by restoring the title to the Reynolds heirs, confer the right to sue so lost, upon them. Not having it, he could not confer it.

So also of the estate conveyed by Mrs. Willett and husband in 1852 to Resley. While title was in Resley, Hearne, under color of title, (if the title bond be held a transfer, such as contemplated in the 15th section of the statute of limitation,) had adverse possession until after the suit was filed in 1858. Hearne's defense, created by his possession under the statute, could not, by the acts of others to which he was no party, be affected. The execution of deeds of any kind among the several claimants affected his rights in no way.

Holding, then, as we do, that the relative strength of the Reynolds and Dawson titles during the period from 1840 to 1849, must be ascertained by considering Jones as holding the Reynolds title, the exclusion of plea and evidence offered of the suits instituted, putting the possession of Dawson in controversy by the Reynolds heirs during that period, could in no way affect the Reynolds title; and the action of the court on these facts. as pleaded, and upon the evidence when offered, was not erroneous.

Holding as correct the instruction given by the court, as to the effect of the deed in evidence from Mrs. Willett and husband to Resley, passing to him her interest, and which was in him at the institution of the suit, the question as to the correctness of the court in admitting the contract of sale and bond for title from Britton Dawson to S. R. Hearne, as a foundation for limitation, becomes unimportant. As plaintiffs had no title to that interest at the institution of suit, the after-acquired title could not support the action.

But we do not see but that, upon the recognized want of distinction in effect, in our courts, of legal and equitable titles, the contract and bond for title were properly admitted as a transfer. As between Hearne and Dawson, it was binding, and evidenced a sale of the land to Hearne. (See Elliott *v.* Mitchell, decided by Special Court, June 15th, West, S. J.)

Disregarding, then, in the further consideration of the case, the interest conveyed by Mrs. Willett and her husband to Resley, and returning to the remaining interest in controversy, which had been vested in Levi Jones, we meet the remaining issue: was the Jones title in the land, at the time of his release to the Reynolds heirs, valid as against the Dawson title? This question involves the correctness of the instructions given to the jury by the court, and assigned as error.

Appellants insist that, owing to the interval in the possession from March 25, 1845, to 1852 or 1853, and the non-occupancy by any one asserting the Dawson title at the time of the reconveyance by Jones in 1849, such conveyance had the effect of reinvesting the old title in full vigor, superior in right to the Dawson title; that the effect of the partition of the Dawson headright among the heirs of the grantee, wherein the land in controversy was set apart to Britton Dawson, who had no occupancy thereafter, had the effect in law of an abandonment of the rights given to such possession, and which had remained upon its continuance, and that, upon such abandonment, the elder title, by its own operation, drew to itself complete title.

If this position be correct, the case should be reversed. What, then, does the statute mean? Section 15 of the statute of limitation enacts that "every suit to be instituted to recover real estate, as against him, her, or them, in possession under title, or color of title, shall be instituted within three years next after the cause of action shall have accrued, and not afterwards." (Paschal's Dig., 4622.)

Article 4604, being sec. 1 of the statute, provides, that "all

actions for detaining the personal property of another and for converting such personal property to one's own use; all actions for taking away the goods and chattels of another, * * shall be commenced and sued within two years next after the cause of such action or suit, and not after."

To this has been given the effect of vesting title. (Wilburn *v.* Cochran, 9 Tex., 125.)

The maxim of the common law, (if it be a maxim,) that the statute could be used "as a shield for defense but not as a sword to assail," is regarded as overruled "so far as the statute applies to personal property." The reasoning of Judge Lipscomb applies as well to real estate in Texas.

Others of the original members of the Supreme Court have expressed their views upon this subject. In Wheeler *v.* Moody, 9 Tex., 377, Wheeler, Justice, discussing this section of the statute, recognizes as a principle, that title may be vested by its operation.

In Horton *v.* Crawford, 10 Tex., 390, Hemphill, C. J., says: "It is true that possession under the fifteenth section * * * does not, in terms, give full title, precluding other claims, but it does what is equivalent: it inhibits suit unless brought within three years from the accrual of the cause of action."

In Scott *v.* Rhea, 5 Tex., 260, Lipscomb, J., speaking of such title holds, "Her (plaintiffs') possession, under her head-right, location, and survey, was long enough to give her a right to the extent of her claim of title, by prescription against the elder title of Lane." This was in a suit by Mrs. Scott *v.* Lane. When the same case again came before the Supreme Court, 21 Tex., 711, Wheeler, J., delivering the opinion, assumed that the statute of three years would confer title upon possession under its conditions, but qualified the decision with the right to recede from it if found to be erroneous.

In Cunningham *v.* Frandtzen, 26 Tex., 38, Roberts, Justice, discussed the question carefully, saying, "In fixing the different periods of limitation in our statute, the Legislature regulated the force and effect to be given to adverse posses-

sion of land by the degree of merits in the title under which it was held and claimed, requiring the longer possession in proportion to the weakness of the title. Under title, or color of title, three years only was required, while under recorded deed, payment of taxes, cultivation, &c., five years was required; and, without title or deed, ten years was required. In the sections prescribing the five and ten years, it is expressly provided for conferring title on the possessor, but not so in the section prescribing three years. In that, however, it is provided ' that the right of the Government shall not be barred.' From this it may be inferred that it was contemplated that such possession would bar or extinguish the superior right of others, but not that of the Government. And the reason why the expression that it should confer title is omitted in this section, may be because the possession must have been under title or color of title from or under the sovereignty of the soil. It need not be the best title, still it must be a title. And if it be the inferior title, three years' possession under it would simply establish it as the superior title from thenceforth. If it should be held that the three years' possession, under color of title, does not extinguish a superior title in some one else not in possession, the incongruity would follow that nine years' possession under title would have less force and effect than five years under a mere recorded deed, or ten years without any title at all. More than that, a possession of a league of land might be continued for fifty years, under color of title, and, upon the possession being discontinued, from any cause, a superior title might be asserted, which had lain dormant during all that time, and the possessor, for fifty years, would hold 640 acres, under the ten years' limitation, without title, and lose all the balance, notwithstanding its possession, under color of title, for fifty years. This would result in not giving effect to possession in proportion to the merits or demerits of the title under which it was held, which, it is thought, must have been the design of the Legislature."

. This reasoning we adopt. We hold, as in Pearson v. Burditt, 26 Tex., 173, (Roberts, Justice,) " The leading object and effect of the 15th section of the statute of limitations is to make three years' adverse possession of land mature the inferior title, in the hands of the possessor, into the superior title."

This matured title, this exemption from suit enjoyed against the holder of the elder title, is not lost by a temporary break in the possession. It draws to itself the presumption of possession allowed by law to the legal title, as against the elder.

Without determining whether the elder title is extinguished, or that the matured junior title may or may not be abandoned, so that the holder of the elder title, on regaining his possession, or in a contest with one not in privity with the junior title, would have his rights unaffected, we do decide that the exemption from suit given by the 15th section of the statute of limitations can be pleaded as a defense by one in possession, in privity of estate, though with disconnected possession, with one who had such three years' possession under the statute.

We therefore hold, that upon the partition of the Dawson league and labor, among his heirs, March 25, 1845, when, as against Levi Jones, the Dawson survey, to the extent of its limits, had matured into the superior title, the allotment of the 903 acres tract in controversy to Britton Dawson did not have the effect of destroying the exemption from suit, or work an abandonment so as to destroy the superiority of the title. Nor was its actual occupancy necessary to accompany a deed, in order to convey to Hearne the same exemption from suit which formed part of Britton Dawson's estate in the land when it was allotted to him. That the release by Jones to the Reynolds heirs, after his title had been superseded by the Dawson title, had no effect upon the validity of that title then existing against him; and that, in a suit by the Reynolds heirs, upon the title received from Jones, the exemption from

suit can be interposed in defense by Hearne, notwithstanding the break in the actual possession.

The judgment, therefore, is affirmed.

AFFIRMED.