P. N. SPOFFORD v. H. L. BENNETT ET ALS.

(Case No. 2818.)

1. LIMITATIONS.— Exemption from suit given by the three years' statute of limitations of February 5, 1841 (Pasch. Dig., art. 4622), is not lost by a temporary break in the possession subsequent to the completed term of adverse possession; and the exemption from suit given by that statute can be pleaded in defense by one in possession in privity of estate, though with disconnected possession, with one who had such three years' possession under the statute.

2. SAME — CASES RE-AFFIRMED.— The above principle, announced by a special court in Erhard v. Hearne, 47 Tex., 470, re-affirmed.

3. QUÆRE.— Whether the three years' bar of limitation, under the act of February 5, 1841, extinguished the older title (if the junior title may be abandoned), so that the holder of the elder title, on regaining his possession, or in a contest with one not in privity with the junior title, would have his rights unaffected, quære.

4. LIMITATION UNDER LOCATION OF UNRECOMMENDED CERTIFICATE.— Under the act of January 19, 1841 (Hart. Dig., art. 2021), the issuance of a patent, being authorized upon a certificate found to be genuine and legal by the traveling board, but not recommended for patent because not obtained in strict accordance with law, such certificate was thereby validated; and possession of land for the period prescribed by law under a location of such certificate and survey is sufficient to support the defense of the statute of limitations.

APPEAL from Falls.    Tried below before the Hon. A. S. Broaddus.

Suit in trespass to try title, brought by P. N. Spofford against H. L. Bennett and others. The defendants pleaded "not guilty," and the defenses of the three, five and ten years' statutes of limitation. The plaintiff produced in evidence a colonial grant to Thomas Byrd, and a chain of title from the grantee down to himself. The defendants introduced a grant to one Basques, from the government, of older date; and a regular chain of title from the grantee down to the defendants was admitted by the plaintiff. The plaintiff relied for the defeat of this title upon the indefiniteness of the description in the grant.

The defendants relied upon their possession under color of title under and by virtue of the James Marlin headright certificate for one league and labor of land, and the survey under it in 1853, which covered the land sued for, and described in plaintiff's petition.

It appears from the statement of facts that the defendant Bennett, in 1858, bought a portion of the land which Marlin claimed and resided on, from him; the quantity thus purchased is not stated. It was admitted by the plaintiff that James Marlin was in continuous peaceable possession of his league, except such portion as he sold off of his tract, "from and before the date of his survey" (7th of December, 1853) "until his death, and his heirs and representatives have continued the same until the present." Plaintiff also admitted the possession of defendants as to all of the Marlin league for three years next before the institution of this suit, "except the Leach 600-acre tract and the Stewart 640-acre tract." Marlin conveyed by deed to Leach, six hundred and forty acres of the league on the 11th day of May, 1857. Bennett testified that the Leach land was again occupied in 1866, and was sold to him in 1868, and had been continuously occupied ever since. Also that he took possession of the Stewart six hundred and forty acres in February, 1859, and has held it ever since in peaceable, adverse and con-

tinuous possession.  No evidence was adduced to show any conveyance of land from Marlin to Stewart.

The defendants introduced, over the objections of the plaintiff, the headright certificate, field notes of survey of the land made by virtue of it on 7th of December, 1853, and the report of the traveling board of land commissioners.  The objection urged was that the certificate did not appear to be a genuine and legal claim, properly recommended; which, being overruled, was reserved by a bill of exceptions, and the ruling is assigned as error.

The headright certificate referred to was issued by the proper authority on the 25th of September, 1838, and certified that James Marlin had proved before the board of land commissioners for the county of Milam that he arrived in the republic subsequent to the declaration of independence, and prior to the 1st of August, 1836; that he was a man of family, and had received an honorable discharge; and that he is entitled to one league and labor of land to be surveyed after the 1st day of August, 1838. The report of the traveling board of land commissioners to detect fraudulent land certificates, reported to the commissioner of the general land office a list of forty-four names — among which was that of James Marlin — to whom certificates had been issued, which certificates they certified they could not, for reasons stated, recommend for patent.  The Marlin certificate was for one league and one labor of land.  The report is as follows:

"The foregoing is a list of claimants under the law providing for volunteer soldiers who emigrated between the declaration of independence and the 1st of August, 1836; also those who emigrated subsequent to the declaration of independence and prior to the 1st of October, 1837; which claims, after mature investigation, we find to be genuine and legal; but in consequence of not having taken the oath required by law, and also an omission of date of most of them, we cannot recommend them for patent."

The court charged the jury, in effect, that the plaintiff, under the evidence adduced by him, was entitled to recover on the sufficiency of his title, unless the defendants' evidence satisfied them that the calls and boundaries set forth in the Basques grant were identified, and embraced within them the land in controversy; or unless they were protected against the plaintiff's title under the James Marlin headright and survey, and the possession of the land which had been had under it. The charge of the court, which relates to the defense of the statute of limitations, is as follows:

"The defendants then showed color of title in themselves deraigned from James Marlin, who located his headright certificate of one league upon the land on which the Byrd survey had been previously made. The defendants also show title in themselves deraigned from Gregorio Basques, to whom title was granted in 1833 to four leagues of land, which defendants allege covers and includes the land in controversy; the plaintiff admits that the defendants' adverse possession, as proven, is a complete bar to a recovery of the land sued for, except as to the six hundred acres sold to Leach and the six hundred and forty acres sold to Stewart. In any event the jury must find for defendants the land not included in the land sold to Leach and Stewart; and the jury will confine their investigation to that part of the land included in the sale to Leach and to Stewart.

"In your investigation of this case, you will bear in mind that Bennett offered a two-fold defense: first, he defends under the Gregorio Basques title; second, under color of title deraigned from James Marlin, which he supports by adverse possession. To support his title under adverse possession, the defendant must show by evidence satisfactory to your minds, that he and those through whom he holds and whose estate he has in the land, have had and held actual, adverse, exclusive and continuing

possession of the land for the period of three years next before the filing of their suit; provided, however, that in computing the time you will not consider the period of time beginning on the 28th of January, 1861, and ending the 30th of March, 1870, during which time the statute of limitations did not run; and that if you find from the evidence the adverse possession beginning before the 28th of January, 1861, and continuing up to the filing of this suit, you will add together the time of such possession before the 28th of January, 1861, and from the 30th of March, 1870, up to the filing of this suit; and if you believe from the evidence that there was such an adverse, actual, exclusive and continuing possession of the Stewart and Leach tracts of land, you will under the issue find for the defendants.    And if you should find from the evidence that James Marlin, before the time he conveyed the land to Leach and to Stewart, had had and held adverse, exclusive and continuing possession of said land, or any part thereof, in the name of the whole for a period of three years, though you should find that there was, after the expiration of the three years, a severance of the title and a discontinuance of the adverse possession by Marlin, you will still find for the defendants the whole of said land, or for such part, if any, as you may find from the evidence was so in possession for the period of three years."

The plaintiff objected as to the part of the charge above quoted, and asked a counter instruction, which was refused, and is as follows:

"The jury are instructed that, in order for the defendants to sustain the plea of limitations of three years, they must prove that their possession under the James Marlin certificate was for the three years next before the commencement of this suit, consecutively."

The refusal to give it, and the giving by the court of

the charge first above quoted, were assigned as errors, and discussed at length.

[In this case the brief of counsel for both parties discussed chiefly the question of certainty of description in the Basques grant.]

*H. D. Prendergast*, for appellant.

I. The effect of the three years' disconnected possession under article 4622, Paschal's Digest, was discussed by our supreme court in the case of Cunningham *v*. Frandtzen, 26 Texas, 39, the present chief justice delivering the opinion. But that case was discussed with a direct reference to the pleadings necessary in such case, and, we most respectfully submit, is not intended as authority upon the question of the effect of such disconnected possession in extinguishing an acknowledged superior right.

Statutes of limitation, being in derogation of common right, must be strictly construed, and there is certainly nothing in the letter of the 15th section of the law of limitations of our state to compel such a construction.

*Wm. M. Hamman*, for appellees.

Walker, P. J. Com. App.—It is manifest from the statement of facts, the charge of the court, the instructions asked by the plaintiff, and the admissions of certain facts contained in the statement of facts, as well as from the errors assigned and the briefs and argument of counsel in this court, that this case was tried upon the concession that the defendants held and claimed title to the land in controversy under a chain of transfer to them under James Marlin. The charge of the court so treated it, the instructions asked implied it; and there is in the statement of facts evidence which seems to imply that the defendant Bennett bought the land from Marlin, and acquired by transfer, in a proper mode, the evidence of the interest thus purchased. It is manifest, from the

same indications, that the defendants did not acquire at one and the same time the quantity of land which they claimed to have acquired under the Marlin headright survey; but that a portion of it was acquired by purchase from Leach, Marlin's vendee, in the year 1868; and that defendant Bennett took possession of the Stewart 640-acre tract in 1859, but under what purchase or transaction is not made to appear. The judge, in his charge, without objection from either party, and it may be assumed that he stated truly, therefore, the *status* which the parties had given to the facts, in direct terms eliminated from the controversy all the land described in plaintiff's petition, except the Leach and Stewart tracts, because the parties themselves had done so before the court, by conceding that the defendants held under a chain of transfer from and under James Marlin. The statement of facts is wanting in specific evidence of any distinct transfer to the defendants under the Marlin headright and survey; and it is for that reason that the foregoing observations are made. Unless such a material and vital element of a defense under the statute of limitations, as the chain of transfer under which the defendants attempt to support their possession, is established by proof; or is waived by concession or admission as to its existence, of course no defense under such a plea could be made available to defendants not holding in privity with such title. Under the interpretation, therefore, which we place upon the record before us, we deem it proper to consider the facts before the jury as the parties and the court there at the trial regarded them. Any question of transfer or deraignment of title through Marlin to the defendants seems to have been wholly ignored, and the case tried upon the assumption that the defendants were assignees by chain of transfer down to themselves; and the reservation or qualification made by the plaintiff in respect to the Stewart and Leach tracts do not appear to have been

made as to those tracts because the lands referred to as such were not included within the transfers of title to the land claimed by the defendants; but the admission thus made had in view the mere question of fact as to possession, and time thereof as to those two tracts, the Leach and the Stewart, because the facts in that connection, as to those two tracts, presented a legal question on the rights of defendants under the statute of limitations, different from the balance of the land; as to which balance, the question was surrendered by plaintiff in favor of the defendants, as the jury were instructed in the presence of counsel, with their seeming consent and approval. '

Considering, then, the evidence as to the time when and by whom the Leach and Stewart tracts, as they are termed, were possessed by the defendants, it appears that the defendant Bennett took possession of the Stewart tract in February, 1859, and held it ever since. It will be intended that, in doing so, he did it lawfully, and with the consent of its then owner, claimant or ostensible owner, and therefore that he did so under his purchase, and at the time thereof, or afterwards. This suit was brought May 29, 1872. Deducting the period of the suspension of the operation of the statutes of limitations, as the charge directed, and the bar of three years would be full and complete; the period of time thus embraced would be nearly four years, or quite that time, if the 1st day of February, 1859, should be taken as the initial point of time from which to make the estimate.

Next, as to the Leach tract. It was admitted by the plaintiff that James Marlin was in possession of the entire league from the date of his survey, which, as has been before stated, was on the 7th of December, 1853. He conveyed to Leach on the 11th of May, 1857. On the 8th day of December next preceding the date of this deed to Leach, the title of Marlin under the three years' statute

of limitations was complete and perfect, so far as concerns the essentials of actual, continuous, peaceable possession for the requisite three years are concerned. It does not become important to the rights of the defendants to follow any further the facts respecting the subsequent adverse continuous possession of the defendants of that tract of land. It was, however, it seems, afterwards occupied in 1866 under the Leach title, and Bennett bought in 1868, and under his title it has been occupied ever since. The two years' possession by defendant after March 30, 1870, does not, however, add to the strength of defendants' title.

The legal conclusion arrived at, as to the effect of the completion of the bar of three years' adverse possession, whilst the land was possessed by the original grantee, Marlin, is maintained by the supreme court, when composed of Chief Justice Roberts and Special Justices A. S. Walker and Charles S. West (the Hon. A. S. Walker delivering the opinion of the court), in the case of Erhard v. Hearne, 47 Tex., 469. The proposition itself was there distinctly decided, and held that the exemption from suit given by the fifteenth section of the statute of limitations can be pleaded as a defense by one in possession in privity of estate, though with disconnected possession, with one who had such three years' possession under the statute. Of course the application of this rule is not less decisive of the defense set up, of limitations, as to the Stewart than the Leach tract; it embraces both with equal conclusiveness; but we saw proper to show that, as to the Stewart tract, resort was not required, under the facts, to the bar of the statute which had been previously consummated, but that it was otherwise complete under their own personal acts of occupancy and claim.

It is not necessary, in this case, to consider whether the three years' bar has the effect to actually extinguish the adverse title under which the plaintiff claims. The

trenchant reasoning, and the cogent illustrations in its support, contained in the opinion of Chief Justice Roberts in Cunningham v. Frandtzen, 26 Tex., 38 (quoted by Special Justice Walker), in support of the affirmative of that question, commend the construction he gave to it strongly to our concurrence, and to incline our judgments to follow that interpretation to its legitimate results.

But it is urged by the appellant that the certificate and survey of Marlin's headright cannot support the defense of the statute of limitations, because the traveling board failed to recommend the certificate for patent. The question is unlike that which arises in cases where there is a failure by the board to indorse their express approval of *genuineness and legality*, as they did do in respect to *this* certificate, and where they have qualified their action in refusing to recommend for patent by such a preface as they used in this instance, and placing their action on the ground of mere irregularity in the matter of taking the oath, and the dates.

The commissioners to detect fraudulent land certificates ("traveling board," as commonly designated) were required to report for patent "such certificates as they find to be *genuine and legal*." Hart. Dig., art. 1946. The commissioner of the general land office was "prohibited from issuing a patent upon any survey that shall not have been, or may hereafter be made by authority of a certificate returned as *genuine and legal* by the commissioners appointed by this act." Hart. Dig., art. 1950. This certificate was returned by that authority in the very terms of the law, as both *genuine and legal*. In the case of Miller v. Brownson, 50 Tex., 593, where parol evidence was attempted to be used to establish the fact that the commissioners did in fact determine and intend to return the certificate for patent, the opinion says: ". The determination of the board of commissioners in

favor of the genuineness of the certificate, however
clearly and conclusively shown, is wholly immaterial, in
view of the fact that their report shows that they failed
to recommend it as *genuine and valid;* for a patent could
not be legally issued on said certificate, admitting it to
have been genuine, unless it was 'returned as genuine
and legal by the commissioners.'" Hart. Dig., arts. 1946,
1950; Pasch. Dig., arts. 4218, 4242, 4243, 4245. The
court there quoting from the language of the law, signify
the opinion that the recommendation by the commission-
ers for patent, nor their declension thus to recommend, is
not the test by which to determine the authority of the
commissioner of the general land office to issue a patent.
It may be doubted at all events, whether, when the com-
missioners have reported a certificate as *genuine and
legal,* their refusal to recommend for patent, because of
informalities or irregularities which have transpired in
its procurement, amounts to a prohibition against patent-
ing, or to anything more than cautionary and advisory
action on their part for the guidance of the commissioner
of the general land office.

Article 2021, Hart. Dig., provides "that the commis-
sioner of the general land office is hereby authorized and
required, forthwith, to make out patents upon all claims
which have been or may hereafter be returned as genuine
and justly entitled by the different boards of land com-
missioners, appointed under ' An act to detect fraudulent
land certificates,' whether the same has been obtained in
strict accordance with law or not." Act of January 19,
1841.

The validity of a location and survey of a headright
certificate which was not recommended for patent by the
commissioners arose for determination in Whitehead *v.*
Foley, 28 Tex., 12. The report made upon the certificate
by the commissioners was, in substance, the same as in
this case, viz., " for the action of the government, believ-

ing it to be a just claim," but declining to recommend it for patent, because the claimant had not subscribed the oath required by the 12th section of the land law of December 14, 1837. It was held in that case, that, under art. 2021, Hart. Dig., above quoted, certificates of this kind were made valid, and patents expressly required to be issued upon them; and that subsequently to the date of the law, claimants under them were certainly entitled to all the rights and privileges of the holders of other valid and established claims for land.

It is unnecessary to consider any other question presented by the record under the assignment of errors. There is no such error apparent in the charge as to warrant any just complaint against it.

The admission of evidence which was excepted to on that branch of the case which related to the Basques grant need not be considered; for, whether it was erroneously admitted or not, cannot affect the result of this appeal, as there was sufficient competent evidence to warrant the verdict under the defense of the statute of limitation; especially as no other verdict than that which was rendered ought to have been rendered, had the evidence objected to been excluded from the jury. Pridgen *v.* Hill, 12 Tex., 374; and see Davis *v.* Loftin, 6 Tex., 489.

Our conclusion is that the judgment ought to be affirmed.

AFFIRMED.

[Opinion delivered May 31, 1881.]