# MYERS *v.* MAYHEW.

---

ADVERSE POSSESSION; REMOVAL OF CLOUD FROM TITLE; EQUITY; LACHES.

1. Continuous acts of possession and user of flat and marsh land, consisting of the use of the land for grazing cows, cutting and selling hay and sod therefrom, and granting permission to shoot over it, show an adverse possession sufficient to vest title if continued for the statutory period. (Following *Holtzman* v. *Douglas,* 5 App. D. C. 3⁹7, S. C. 168 U. S. 278, 42 L. ed. 466, 18 Sup. Ct. Rep. 65; *Davis* v. *Coblens,* 12 App. D. C. 51, S. C. 174 U. S. 719, 43 L. ed. 1147, 19 Sup. Ct. Rep. 832, and *Howison* v. *Masson,* 29 App. D. C. 338.) ·

2. Title acquired by adverse possession for a period of twenty years is not lost by subsequent abandonment of possession.

3. A bill in equity by one claiming title to land by adverse possession, to establish his title, is the proper remedy against the record owners, and not ejectment, where the latter have never entered into possession or attempted to oust the complainant. (Citing *Peck* v. *Heurich,* 6 App. D. C. 273.)

4. One whose title to land is based upon adverse possession is not estopped from asserting his title by filing a bill in equity against the owners of the record title to remove cloud from title, by the mere fact that he has delayed many years in taking such action, during which time such owners of the record title have bought, sold, and encumbered the record title. It is at their own risk that they deal with the land without inquiry of the one in possession.

5. A great deal of indulgence has always been extended to one in undisputed possession of property, in respect of proceedings to quiet or perfect a title that has not been assailed. (Following *Brainard* v. *Buck,* 16 App. D. C. 595.)

6. One having title to land by adverse possession is not guilty of such laches as will preclude him from maintaining a bill in equity to remove cloud from title, although the possession of his ancestors under whom he claims ripened into title by adverse possession almost fifty years before the bill was filed, where the land, which is flat and marsh land, for many years was not considered of sufficient value to cause the authorities to assess it for taxation, and only recently attained a value, and the owner of the record title took no steps to interfere with his possession, and the complainant brought his suit as soon as it seemed important to his interest to do so.

No. 1798.   Submitted November 5, 1908.   Decided December 1, 1908.

HEARING on an appeal by the defendants from a decree of the Supreme Court of the District of Columbia granting the relief sought in a suit in equity to establish the complainant's title to certain land by reason of his alleged adverse possession thereof.                                   *Affirmed.*

The COURT in the opinion stated the facts as follows:

This suit was begun by Lemuel E. Mayhew, who filed his bill, July 16, 1903 [against Thomas J. Meyers and Augustus Burgdorf, Trustees, Clarence R. Wilson and Enoch L. White, Trustees, and Benjamin Katzenstein], to remove cloud from, and perfect a title acquired by, adverse possession.

Plaintiff is the sole heir at law of George Mayhew, who, it is alleged, entered into possession, in 1811, of a large tract of land, of which the parcel described in the bill is a part, and held notorious, exclusive, and adverse possession until his death, in 1878, since which date plaintiff has maintained the same. The parcel described consists chiefly of flat and marsh land bordering the Eastern branch, or Anacostia river, and is limited by metes and bounds as set out in certain paper titles under which it is alleged the defendants claim. Without reciting the testimony of many old inhabitants introduced as witnesses by the plaintiff, we think it sufficient to say that the following facts are satisfactorily established. The father of George Mayhew lived in a house adjacent to the tract described, from an early day in the

last century until his death. He was succeeded by his son George, who died in 1878. Plaintiff, as the sole child and heir at law of George Mayhew, succeeded him in the possession of the land. The house, early in George Mayhew's time, was surrounded by a fence which inclosed land outside of the boundaries in controversy. The above fence was joined by another which ran for some distance along what was called Coal Run road, and, turning, terminated in the marsh where the water was deep enough to prevent cattle passing around its end. This completely inclosed the land in controversy. George Mayhew was a farmer who raised corn and vegetables in the house inclosure, and cut hay and pastured his cows in the other inclosure. This latter fence was erected more than twenty years before 1862, and by means of it and his acts of ownership George Mayhew maintained an undisturbed, notorious, and exclusive possession of the land inclosed. The land was generally known as his. A map of the surrounding country, made by one Boshke in 1857, that was in common use in the District, shows the meadow and marsh land inclosed, and designated it as claimed by George Mayhew. The fence along the Coal Run road, of posts and rails, was maintained until sometime in 1862. At that time a considerable number of soldiers were encamped near by, who began to burn the rails. To prevent their destruction the rails were taken up and removed by George Mayhew. After the removal of the fence, Mayhew continued to claim the land and use it for cutting hay and pasturing his cows and other cattle.

After plaintiff succeeded to the title of his father, he continued to use the land for grazing his dairy cows and cutting hay. In addition, he cut out and sold sod and sand therefrom. Shooting over it was by his permission. It does not appear that anyone undertook to interfere with his possession and exercise of ownership. The paper titles and encumbrances referred to in the bill as those under which the defendants assert title were not connected with the sovereignty of the soil; and the owners do not set out the defendants' titles. It is unnecessary to state their character as recited in the bill. Defendants never entered into possession under their claim of title.

The court was of the opinion that the proof of adverse pos-
session was sufficient to vest title in the plaintiff, and entered a
decree to that effect.    Defendants were also perpetually en-
joined from claiming or asserting any right, title, or interest
in and to said land or any part thereof.    From this decree, all
of the defendants have appealed.

*Mr. Nathaniel Wilson, Mr. Clarence R. Wilson* and *Messrs.
Carlisle & Johnson* for the appellants.

1. The bill of complaint should be dismissed because the
complainant, being out of possession, has a full, adequate, and
complete remedy at law by his action of ejectment.    Mayhew
is out of possession of the property.    He is not, therefore,
entitled to maintain his bill.    No rule is better settled than
that which requires a possession on the part of a person seeking
the aid of a court of equity to remove a cloud from his title or
to have declared in him a perfect title by adverse possession.
*United States* v. *Wilson,* 118 U. S. 86, 89.    In many States the
necessity of possession has been done away with by statute.
There is nothing, however, in sec. 111 of the Code which dis-
penses with the necessity of possession; and, as remarked by
Mr. Justice Morris (24 App. D. C. 51), sec. 111 of the Code
merely "reduces to the form of a statute the rule of equity
stated by the Supreme Court of the United States in the case
of *Sharon* v. *Tucker,* 144 U. S. 533   *   *   *   for the conver-
sion of a title by adverse possession into a record title."    The
reason of the rule requiring possession is obvious.    When the
claimant is out of possession he has his plain, adequate, and
complete remedy by an action of ejectment, and there is no
possible ground for equitable interference.    In the present case
the premises are not actually occupied, but the holders of the
legal title are constructively in possession.    At any rate, eject-
ment to recover unoccupied property lies against any person,
whether in actual occupation or not, claiming title to the same

or some interest therein adverse to the plaintiff. 7 Enc. Pl. & Pr. p. 305, cases cited in note 2. Perfected title by adverse possession is sufficient to enable the plaintiff to recover in an action of ejectment. *Sutton* v. *Pollard,* 96 Ky. 645; *Winter* v. *White,* 70 Md. 305; *N. Y.* v. *Carleton,* 113 N. Y. 284. In each of these cases it was distinctly decided that title by adverse possession was sufficient to maintain an action of ejectment. If, therefore, the court should dismiss complainant's bill, he would have his adequate remedy at law, and, by showing his adverse possession, would obtain a judgment which would amply protect him in his possession. On the other hand, the defendants would have the opportunity to have questions of fact appertaining to Mayhew's possession properly and fairly tried by a jury.

2. The complainant is estopped from asserting his title by adverse possession by reason of his acquiescence in the buying, selling, and encumbering of the property by the holders of the legal title since 1862. The case clearly comes within the principle so often and so beneficially acted upon by courts of equity, that he who stands by in silence while others deal with his property shall be estopped thereafter to assert his title to it. *Dickerson* v. *Colgrove,* 100 U. S. 578; *Kirk* v. *Hamilton,* 102 U. S. 68; *Swan* v. *N. B. A. Co.* 7 Hurlst. & N. 603; 11 Am. & Eng. Enc. Law, 2d ed. p. 430, and cases cited in note 1.

3. The complainant is barred by his unexcused delay and laches from seeking the aid of a court of equity to establish his title by adverse possession to the property, which he had abandoned in 1862. *Bowman* v. *Wathen,* 1 How. 172; *Mayse* v. *Gaddis,* 2 App. D. C. 20; *Knox* v. *Gaddis,* 1 App. D. C. 336; *Sage* v. *Winona & St. P. Ry. Co.* 7 C. C. A. 237.

*Mr. Wm. F. Mattingly* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The first assignment of error is general, and is embraced in others specific in their nature. The second is as follows: "The

court below erred in holding and decreeing that the fee-simple
title to the parcels of land described in the decree is in com-
plainant, Lemuel E. Mayhew, by adverse possession." This
goes to the sufficiency of the evidence to show the necessary legal
requisites of adverse possession. The position of appellants'
counsel is thus stated in their brief: "Unlike most cases of
adverse possession, this is not a case in which disputed ques-
tions of fact alone are in issue. We do not ask the court merely
to review the findings of fact of the court below, and to reverse
the decree because of errors of the court below as to facts.
The questions to be presented are as to the *quantum* of evidence
necessary to prove certain facts in cases involving adverse pos-
session, and as to whether such facts, if proved, establish ad-
verse possession." The testimony, as we have before stated,
showed adverse possession of the character required by law,
for a period of more than twenty year before the removal of
the Coal Run road fence in 1862. This is substantially conceded
by the appellants' contention, which is as follows: "The only
proposition of fact upon which we rely, and which is conclu-
sively established by·the evidence, is that in 1862 the May-
hews abandoned the property which they had before possessed,
and that after 1862 they never maintained exclusive, notorious,
and continued adverse possession of the property." We cannot
agree with this contention. In our opinion, the testimony,
while it does not show the inclosure of the land after 1862,
utterly fails to show an abandonment of the possession and
claim of title. Moreover, the continuous acts of possession and
user after 1862, considering the nature and uses of the land,
show an adverse possession sufficient to vest title under the law
prevailing in this jurisdiction. *Holtzman* v. *Douglas,* 5 App.
D. C. 397, S. C. 168 U. S. 278, 42 L. ed. 466, 18 Sup. Ct. Rep.
65; *Davis* v. *Coblens,* 12 App. D. C. 51, S. C. 174 U. S. 719, 43
L. ed. 1147, 19 Sup. Ct. Rep. 832; *Howison* v. *Masson,* 29
App. D. C. 338, 348. But were it conceded that after 1862 the
acts of George Mayhew and his successor amounted to nothing
more than a mere claim of title, unaccompanied by the necessary
acts of exclusive adverse possession, it does not follow that the

decree should be reversed. The adverse possession for more than twenty years before the removal of the fence in 1862 extinguished all opposing rights and vested a perfect title in George Mayhew, which his death cast upon plaintiff. *Leffingwell* v. *Warren,* 2 Black, 599, 605, 17 L. ed. 261, 263; *Bicknell* v. *Comstock,* 113 U. S. 149, 152, 28 L. ed. 962, 963, 5 Sup. Ct. Rep. 399; *Campbell* v. *Holt,* 115 U. S. 620, 623, 29 L. ed. 483, 485, 6 Sup. Ct. Rep. 209; *Toltec Ranch Co.* v. *Cook,* 191 U. S. 532, 538, 48 L. ed. 291, 293, 24 Sup. Ct. Rep. 166. In the case last cited it was said by Mr. Justice McKenna, as a result of former adjudications: "Adverse possession, therefore, may be said to transfer the title as effectually as a conveyance from the owner; it may be considered as tantamount to a conveyance." This principle was followed to its logical conclusion by the general term of the supreme court of the district in holding that a title acquired by adverse possession for a period of twenty years was not lost by subsequent abandonment of the possession. *Todd* v. *Kauffman,* 8 Mackey, 304, 315. See also *Sherman* v. *Kane,* 86 N. Y. 57, 65; *Jacks* v. *Chaffin,* 34 Ark. 534, 541; *School Dist. No. 4* v. *Benson,* 31 Me. 381, 385, 52 Am. Dec. 618; *Allen* v. *Mansfield,* 82 Mo. 688, 693; *Sage* v. *Rudnick,* 67 Minn. 362, 364, 69 N. W. 1096; *Erhard* v. *Hearne,* 47 Tex. 469, 480; *Milliken* v. *Kennedy,* 87 Ga. 463, 13 S. E. 635.

Three propositions of law are maintained by the appellants under the remaining assignments of error, which will be considered in the order of their presentation.

The first is this: "The bill of complaint should be dismissed because the complainant has a full, adequate, and complete remedy at law, being out of possession, by his action of ejectment." A sufficient answer to this contention is that the plaintiff is, as we have seen, in, and not out of, possession. Moreover, ejectment would not lie against the defendants, because they have never entered into possession, or attempted to oust the plaintiff. *Peck* v. *Heurich,* 6 App. D. C. 273, 281.

The second proposition is: "The plaintiff is estopped from asserting his title by adverse possession, by reason of his ac-

quiescence in the buying, selling, and encumbering of the property by the holders of the legal title since 1862." We think it clear that there was no acquiescence, in any possible legal or equitable meaning of that term, by the plaintiff in the acts of others who, between themselves, attempted to convey and encumber his land. He neither said nor did anything to induce purchasers or encumbrancers to believe that he had no claim of title. His possession gave them all the notice that they were entitled to, and it was at their own risk that they dealt with his land without inquiry of him. There is no element of estoppel through his conduct.

The third and last proposition is that plaintiff is barred of his right to seek relief in equity by reason of his long delay and unexplained laches. It is to be remembered that his suit was filed about one year and a half after the enactment of sec. 111 of the Code, under the authority of which it was brought. But passing by the question whether the laches of plaintiff is to be measured by that fact, and assuming that he might have maintained the suit before the enactment of the section, we are unable to perceive that he has been guilty of such laches as to bar his right to the equitable relief sought. A great deal of indulgence has always been extended to one in the undisturbed possession of property, in respect of proceedings to quiet or perfect a title that had not been assailed. Brainard v. Buck, 16 App. D. C. 595, 601, S. C. 184 U. S. 99, 109, 46 L. ed. 449, 455, 22 Sup. Ct. Rep. 458. The land in this case had for years not been considered of sufficient value to cause the District government to assess it for taxation. It has only attained a value in recent years. Plaintiff was not charged with notice of the record of conveyances of his property by others, and the holders of the titles so claimed took no steps to interfere with his possession or exercise of ownership. They could at any time have begun actions of ejectment against him to recover possession under these titles, but failed to do so. Plaintiff began his suit as soon as it seemed important to his interests to do so. We see nothing that put him under any duty or obligation to begin his suit earlier.

The decree was right, and must be affirmed, with costs. It is so ordered. *Affirmed.*

On application of the appellants, an appeal to the Supreme Court of the United States was allowed December 16, 1908.